No. 24-12038

# IN THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

———————————

## UNITED STATES OF AMERICA,

### Plaintiff-Appellee,

### v.

## GREGORY ALLEN WILLIAMSON, a.k.a. Vlad Vlad,

### Defendant-Appellant.

———————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
NO. 8:21-CR-355 (HON. WILLIAM F. JUNG)

———————————

## ANSWERING BRIEF FOR THE UNITED STATES

———————————

GREGORY W. KEHOE
United States Attorney

DAVID RHODES
Chief, Appellate Division
U.S. Attorney's Office
Middle District of Florida

MATTHEW R. GALEOTTI
Acting Assistant Attorney General

ANDREW W. LAING
U.S. Department of Justice
Criminal Division, Appellate Section
950 Pennsylvania Ave. NW
Washington, DC 20530
(202) 353-8433
andrew.laing@usdoj.gov

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

In addition to the persons identified in the certificate of interested persons and corporate disclosure statement in defendant Gregory Williamson's principal brief, the following persons may have an interest in the outcome of this case:

Galeotti, Matthew R., Acting Assistant Attorney General;

Hoppmann, Karin, former Acting United States Attorney;

Jenkins, Hon. Elizabeth A., United States Magistrate Judge;

Laing, Andrew W., Attorney, Appellate Section.

No publicly traded company or corporation has an interest in the outcome of this appeal.

s/ Andrew Laing
ANDREW W. LAING
U.S. Department of Justice
Criminal Division, Appellate Section
950 Pennsylvania Ave. NW
Washington, DC 20530
(202) 353-8433
andrew.laing@usdoj.gov

## STATEMENT REGARDING ORAL ARGUMENT

The government submits that the briefs adequately set forth the facts and law relevant to deciding this case and that oral argument would not substantially aid the Court.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ....................................... C-1

STATEMENT REGARDING ORAL ARGUMENT...................................i

TABLE OF AUTHORITIES ........................................................ iv

JURISDICTIONAL STATEMENT............................................... 1

STATEMENT OF THE ISSUES ................................................. 1

STATEMENT OF THE CASE ..................................................... 1

    I.    Procedural History...................................................... 1

    II.    Statement of the Facts ................................................ 3

        A.    Yahoo Routinely Monitored and Reported CSAM ............ 3

        B.    Williamson Sent CSAM via Email, which Yahoo Detected.................................................................. 6

        C.    Law Enforcement Investigated ........................... 7

    III.    Course Of Proceedings............................................. 10

    IV.    Rulings Under Review ............................................. 15

SUMMARY OF ARGUMENT .................................................. 15

ARGUMENT ...................................................................... 16

    I.    The District Court Correctly Denied Williamson's First Motion To Suppress................................................. 16

        A.    Standard of Review.......................................... 17

        B.    Discussion.................................................... 17

1.    The private-search doctrine permitted law enforcement's review of images Yahoo had already examined. ................................................. 18

2.    Williamson failed to carry his burden to justify a *Franks* hearing. ...................................................... 29

3.    The good-faith exception applies. ........................... 33

II.    The District Court Correctly Denied Williamson's Second Motion To Suppress................................................. 36

A.    Standard of Review........................................... 36

B.    Discussion.................................................... 37

1.    The Yahoo Warrant was sufficiently particular. ...... 37

2.    Even if the Yahoo Warrant failed to satisfy the particularity requirement, the good-faith exception applies. ................................................. 42

CONCLUSION.......................................................... 45

# TABLE OF AUTHORITIES

## Cases

*Coolidge v. New Hampshire*,
    403 U.S. 443 (1971) .................................................................. 37

*Focus on the Family v. Pinellas Suncoast Transit Auth.*,
    344 F.3d 1263 (11th Cir. 2003) .............................................. 27

*\*Franks v. Delaware*,
    438 U.S. 154 (1978) ................................................... 11, 15, 17

*Nat'l Broad. Co. v. Commc'ns Workers of Am., AFL-CIO*,
    860 F.2d 1022 (11th Cir. 1988) .............................................. 28

*Sapuppo v. Allstate Floridian Ins. Co.*,
    739 F.3d 678 (11th Cir. 2014) ................................................ 35

*United States v. Albury*,
    782 F.3d 1285 (11th Cir. 2015) .............................................. 29

*\*United States v. Alford*,
    744 F. App'x 650 (11th Cir. 2018) ...........................38, 40, 42, 43

*United States v. Allen*,
    106 F.3d 695 (6th Cir. 1997) .................................................. 25

*United States v. Allen*,
    854 F. App'x 329 (11th Cir. 2021) .......................................... 25

*United States v. Andres*,
    960 F.3d 1310 (11th Cir. 2020) .............................................. 36

*United States v. Barsoum*,
    763 F.3d 1321 (11th Cir. 2014) ................................... 17, 29, 33

*\*United States v. Blake*,
    868 F.3d 960 (11th Cir. 2017) ........................... 38, 39, 40, 43, 44

iv

*United States v. Bradley*,
   644 F.3d 1213 (11th Cir. 2011) ............................................................ 41

*United States v. Cameron*,
   699 F.3d 621 (1st Cir. 2012) ................................................................ 23

*United States v. Campbell*,
   26 F.4th 860 (11th Cir. 2022) (en banc) ................................................ 35

*United States v. Castaneda*,
   997 F.3d 1318 (11th Cir. 2021) ......................................................18, 19

*United States v. DiTomasso*,
   81 F. Supp. 3d 304 (S.D.N.Y. 2015) .................................................... 26

*United States v. Ford*,
   765 F.2d 1088 (11th Cir. 1985) ............................................................ 19

*United States v. Harling*,
   705 F. App'x 911 (11th Cir. 2017) ....................................................... 19

*United States v. Henry,*
   447 U.S. 264 (1980) ............................................................................. 26

*\*United States v. Jacobsen*,
   466 U.S. 109 (1984) ............................................................................. 18

*\*United States v. Leon*,
   468 U.S. 897 (1984) ...........................................................14, 18, 34, 42

*United States v. Martin*,
   297 F.3d 1308 (11th Cir. 2002) .................................................. 34, 35, 42

*\*United States v. McCall*,
   84 F.4th 1317 (11th Cir. 2023) .................................................37, 39, 43, 44

*United States v. Meals*,
   21 F.4th 903 (5th Cir. 2021) ...................................................... 20, 21, 24

*United States v. Miller*,
   982 F.3d 412 (6th Cir. 2020) ............................................................... 21

*United States v. Molsbarger*,
    551 F.3d 809 (8th Cir. 2009) ................................................................ 25

*United States v. Moon*,
    33 F.4th 1284 (11th Cir. 2022) ............................................................ 33

*United States v. Morales*,
    987 F.3d 966 (11th Cir. 2021) ................................................ 34, 35, 42

*United States v. Ramirez-Chilel*,
    289 F.3d 744 (11th Cir. 2002) ............................................................ 27

*United States v. Richardson*,
    607 F.3d 357 (4th Cir. 2010) .............................................................. 22

*United States v. Ringland*,
    966 F.3d 731 (8th Cir. 2020) ........................................................22, 24

*United States v. Rivenbark*,
    748 F. App'x 948 (11th Cir. 2018) ........................................................ 5

*United States v. Rosenow*,
    50 F.4th 715 (9th Cir. 2022) ............................................................... 21

*United States v. Ross*,
    964 F.3d 1034 (11th Cir. 2020) ........................................................... 25

*United States v. Sotelo*,
    130 F.4th 1229 (11th Cir. 2025) ............................................................ 4

*United States v. Sparks*,
    806 F.3d 1323 (11th Cir. 2015), *overruled on other grounds by*
    *United States v. Ross*, 963 F.3d 1056 (11th Cir. 2020) (en banc)................. 19

*United States v. Steiger*,
    318 F.3d 1039 (11th Cir. 2003) ................................................ 19, 20, 22

*United States v. Sykes*,
    65 F.4th 867 (6th Cir. 2023) ............................................................... 21

*United States v. Tovar-Rico*,
61 F.3d 1529 (11th Cir. 1995) ................................................................ 17

*United States v. Villabona-Garnica*,
63 F.3d 1051 (11th Cir. 1995) .................................................................. 3

*United States v. Wilson*,
13 F.4th 961 (9th Cir. 2021) .................................................................... 29

*United States v. Wuagneux*,
683 F.2d 1343 (11th Cir. 1982) .............................................................. 37

*United States v. Young*,
350 F.3d 1302 (11th Cir. 2003) .............................................................. 35

## Statutes, Rules, and Constitutional Provisions

U.S. CONST. amend. IV ....................................................................... 18, 37

18 U.S.C. § 2251 ...................................................................................... 2

18 U.S.C. § 2252 ...................................................................................... 2

18 U.S.C. § 2258A .................................................................................. 21

18 U.S.C. § 2258D .................................................................................. 20

18 U.S.C. § 2422 ...................................................................................... 2

18 U.S.C. § 3231 ...................................................................................... 1

28 U.S.C. § 1291 ...................................................................................... 1

11th Cir. R. 28-5 ...................................................................................... 1

## JURISDICTIONAL STATEMENT

Defendant-Appellant Gregory Williamson appeals from the judgment in his criminal case. The district court had jurisdiction under 18 U.S.C. § 3231. Judgment was entered on June 20, 2024, DE.273,[1] and Williamson filed a timely notice of appeal the next day, DE.276. This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

1.    Whether the district court correctly denied Williamson's first motion to suppress evidence of child pornography seized from warranted searches of Williamson's Yahoo email account and his home.

2.    Whether the district court correctly denied Williamson's second motion to suppress evidence of child pornography seized from the warranted search of Williamson's Yahoo email account.

## STATEMENT OF THE CASE

### I.    Procedural History

A federal grand jury in the Middle District of Florida returned an indictment charging Williamson with one count of coercion and enticement of

---

[1] "DE" refers to a district court docket entry, followed if necessary by page number(s) within the cited document. "Br." refers to Williamson's opening brief. This brief refers to district court filings by the page numbers in the headers generated by the district court's electronic filing system. *See* 11th Cir. R. 28-5. This brief refers to Williamson's brief by the page numbers it uses.

a minor to engage in sexual activity, in violation of 18 U.S.C. § 2422(b); one count of attempted production of child pornography, in violation of 18 U.S.C. § 2251(a) and (e); two counts of production and attempted production of child pornography, in violation of 18 U.S.C. § 2251(a) and (e); three counts of distribution of child pornography, in violation of 18 U.S.C. § 2252(a)(2) and (b)(1); and one count of possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B) and (b)(2).  DE.1.

Prior to trial, Williamson twice moved to suppress evidence, including child sexual abuse material ("CSAM") obtained following warranted searches of his Yahoo email account and his residence, and the district court denied both motions.  DE.145; DE.186.

Williamson proceeded to a jury trial and was convicted on all counts. DE.273.  The district court sentenced Williamson to life imprisonment, to be followed by a lifetime term of supervised release.  DE.273:2-3.

## II.    Statement of the Facts[2]

### A.    Yahoo Routinely Monitored and Reported CSAM

Yahoo was a private company that, among other things, offered email accounts to members of the public.[3]  DE.99:72; DE.290:136.  Yahoo required its users to agree to its terms of service in order to use its email account services; those terms included an agreement not to use Yahoo to "upload, post, email, transmit, or otherwise make available any content that is unlawful, harmful, threatening, abusive, harassing, tortious, defamatory, vulgar, obscene, libelous, invasive of another's privacy, hateful, or racially, ethnically or otherwise objectionable" or "harm[ful] to minors in any way."  DE.99:74-76.  Yahoo enforced those terms by disabling users' email accounts when it discovered that those users had shared illegal content, including "specifically" when it uncovered evidence of abuse of minors.  DE.99:75-76.

---

[2] The facts recounted herein are drawn both from the suppression hearing and from the trial.  *See United States v. Villabona-Garnica*, 63 F.3d 1051, 1056 (11th Cir. 1995) ("In ruling on the correctness of the trial court's motion to suppress, . . . [this Court] may consider any evidence presented at the trial of the case and [is] not limited to the evidence introduced at the hearing on the motion." (brackets and internal quotation marks omitted)).

[3] During the relevant time period, Yahoo! Inc. was owned by Oath Holdings.  *See* DE.44-1:4.  This brief, like Williamson's, refers to the company simply as "Yahoo."

To monitor compliance with its terms of service, Yahoo scanned its users' outgoing emails for still images and videos containing material that had previously been identified as CSAM, using an automated process called "hash match[ing]." DE.290:121-122. Each individual digital image or video file carries an associated "hash value," which "is basically a digital fingerprint" that can easily be compared to a database of known CSAM images' and videos' hash values. DE.99:21-22; *see also United States v. Sotelo*, 130 F.4th 1229, 1241 n.3 (11th Cir. 2025) (explaining concept of hash values). Yahoo used an automated process to compare the hash values of images and videos contained in emails its users sent against a database of hash values associated with known CSAM maintained by the National Center for Missing and Exploited Children ("NCMEC"), a private nonprofit organization dedicated to protecting children against exploitation. DE.99:10 (describing NCMEC); DE.99:76-77 (explaining process of cross-referencing hash values against NCMEC's list). Yahoo was not required by law to monitor media contained in its users' outgoing emails in this way, but it did so voluntarily in order to "keep [its] users safe, first and foremost," and because of its "business responsibility to create a safe environment." DE.99:91; *see also* DE.290:136 (Yahoo manager testifying that if Yahoo "were a haven for this content, [it] wouldn't have users").

Whenever Yahoo's automated process detected a match between the hash value of a user's emailed file and a hash value in NCMEC's database, the relevant file was referred to a human, who reviewed the file to determine whether it in fact contained CSAM.  DE.99:79.  If it did, other files sent from that email address would also be saved and referred for additional human review.  DE.99:79-80, 118-119.

Following that review process, Yahoo submitted to NCMEC a referral of relevant information surrounding its discovery of CSAM, including the user's username, email address, and IP address,[4] as well as the hash values and file names associated with the CSAM Yahoo discovered, packaged in a format called a CyberTip.  DE.99:81-82.  Yahoo "[n]ever" submitted a CyberTip without a human's first having viewed the relevant images or videos.  DE.99:85.  After submitting a CyberTip to NCMEC, Yahoo then disabled the relevant user's account.  DE.99:86.

Upon receiving a CyberTip from an electronic service provider such as Yahoo, NCMEC analysts reviewed the submitted files in order to determine

---

[4] An IP ("Internet protocol") address is a temporary address that a device uses to communicate over the Internet, and a particular IP address can be associated with a specific Internet service provider as well as an approximate geographic location.  DE.291:115-117; *see also United States v. Rivenbark*, 748 F. App'x 948, 951 & n.1 (11th Cir. 2018) (per curiam) (defining IP addresses and describing law enforcement investigation involving one).

whether a child was at risk and alerted law enforcement regarding any potential CSAM-related offenses. DE.99:17-18. As a matter of policy, NCMEC analysts only ever viewed files that either had already been viewed by the referring electronic service provider and/or were publicly available. DE.99:65. At least two NCMEC analysts reviewed each image or video so that NCMEC could accurately label and categorize it. DE.99:24.

### B.    Williamson Sent CSAM via Email, which Yahoo Detected

Beginning in approximately 2019, Williamson forcibly subjected Minor Victim to an escalating pattern of sexual harassment and abuse. DE.291:67-84, 97-98. His conduct included repeated instances of physical assault, and he threatened to separate Minor Victim from her family if she told anyone what he did. DE.291:71-79. Williamson also secretly recorded Minor Victim in her bedroom by giving her two USB-powered phone chargers that contained hidden cameras. DE.291:86-89.

Williamson also harassed Minor Victim via email, including by using a Yahoo email account with the username "vladlover50."[5] DE.291:91-103. In September 2020, Yahoo's automated hash-matching process flagged media sent from that email account as possible CSAM, triggering review by human

---

[5] This username and the "Vlad Vlad" alias Williamson associated with it are references to the Vladimir Nabokov novel *Lolita*, which has become "a recurring theme in child pornography investigations." DE.291:196-197.

moderators. DE.290:122-127. Pursuant to Yahoo's routine process, human moderators reviewed images sent from the vladlover50 account, confirmed that several of them appeared to contain CSAM, and generated a CyberTip report to NCMEC, which included seven image files. DE.99:32; DE.290:126, 131-137. After generating the CyberTip, Yahoo disabled the vladlover50 account. DE.290:127.

NCMEC, in turn, processed Yahoo's CyberTip regarding the vladlover50 account in October 2020. DE.99:26-27. NCMEC analysts reviewed six of the seven files Yahoo had submitted (and did not review the seventh only because it was "identified as being a seen-before file" with a NCMEC label "already applied"). DE.99:28-29, 34. After categorizing all but one of the images as containing either "[u]nconfirmed" or "[a]pparent" child pornography, DE.44-1:9, NCMEC submitted its report to the Central Florida Internet Crimes Against Children task force to enable law enforcement to investigate, DE.99:31; *see also* DE.99:61-62 (explaining how NCMEC used IP addresses to determine which law enforcement agency received its reports).

## C.    Law Enforcement Investigated

After the North Port Police Department in central Florida received the CyberTip report from NCMEC in November 2020, Detective James Keller reviewed the seven associated images obtained from the vladlover50 account

7

and determined that at least four of them constituted CSAM.   DE.44-2:5; DE.291:119.  Detective Keller next sought a search warrant for the vladlover50 Yahoo account (the "Yahoo Warrant").   In his application for the Yahoo Warrant, he explained, among other things, that Yahoo "maintain[ed] information about [its] customers," including "account login activity such as the geographic area [where] the user logged into the account" and "[t]he IP address," which "can be resolved back to a physical address such as a residence or business."  DE.134-1:6.  He also explained that, because Yahoo "may not verify the true identity of an account creator, account user or any other person who accesses a user's account," "it is necessary to examine particularly unique identifying information that can be used to attribute the account data to a certain user," including "account data, usage, and activity through communication, connected devices, locations, associates, and other accounts."  DE.134-1:6.  He accordingly sought and obtained permission to search seven categories of the Yahoo account's data, including the vladlover50 account's "account activity" from the time the account was created, "for any instruments, articles, and/or things which are contraband, or used in the commission of, or may constitute evidence of the offense of" possession of child pornography in violation of Florida law.  DE.134-1:8-9.  Execution of the Yahoo Warrant revealed a large

quantity of sexually explicit emails and images, including CSAM that Williamson had emailed to Minor Victim.  DE.291:124-155.

After learning that the recipient of many of the vladlover50 emails was a minor and that she and the user of the account appeared to live at the same address, Detective Keller determined that the situation was urgent and immediately began drafting an application for a warrant to search Williamson's home (the "Residential Warrant").  DE.291:156-157; DE.44-2 (Residential Warrant affidavit and application).  Like the Yahoo Warrant application, the Residential Warrant application included detailed descriptions of the seven images obtained from the vladlover50 account based on Detective Keller's personal review of those images.  DE.44-2:5 (Residential Warrant descriptions); *see* DE.134-1:4-5 (Yahoo Warrant descriptions).  Unlike the Yahoo Warrant application, the Residential Warrant application also described how NCMEC had categorized four of the images; with respect to three of those images, which Detective Keller described as CSAM, the application stated that NCMEC had described them as "Child Pornography," although the CyberTip reflected that NCMEC had in fact applied the label "CP" (*i.e.*, child pornography) "(Unconfirmed)."[6]  *Compare* DE.44-2:5 *with* DE.44-1:9.

---

[6] With respect to the remaining four images, Detective Keller characterized one as CSAM while accurately stating that NCMEC had categorized it as "Apparent Child Pornography"; characterized one as not

Detective Keller obtained the Residential Warrant, and pursuant to that warrant law enforcement searched Williamson's (and Minor Victim's) home and discovered substantial additional inculpatory evidence, including a cellular phone containing a large quantity of images and videos captured by a hidden camera in Minor Victim's bedroom.  DE.291:161-175.

## III.  Course Of Proceedings

After indictment, Williamson twice moved to suppress evidence, and the district court denied both motions.

1.    Williamson first moved to suppress all evidence seized pursuant to the Yahoo Warrant and the Residential Warrant.   DE.44.   Williamson contended that Yahoo functioned as a government agent for Fourth Amendment purposes and that it violated his Fourth Amendment rights by searching the contents of his email account.  DE.44:7-12.  He further argued that, even if Yahoo was not a government agent, the private-search doctrine did not apply to the subsequent law enforcement review of the images obtained from

_____

CSAM (an image "of a white female clothed") without stating NCMEC's categorization; and characterized two as "age difficult," meaning "it is difficult to determine an approximate age of the subject," without stating NCMEC's categorizations.  DE.44-2:5.  Notably, Detective Keller's categorizations of the two images in the latter category were less inculpatory than NCMEC's, which had labeled the images "CP (Unconfirmed)" and "Apparent Child Pornography."  DE.44-1:9.

Williamson's email account because law enforcement's search exceeded the scope of Yahoo's search.  DE.44:12-14.

Additionally, Williamson contended that Detective Keller included "reckless misrepresentations and omissions" in connection with his affidavits' descriptions of the images, requiring suppression under *Franks v. Delaware*, 438 U.S. 154 (1978).  DE.44:15-19.  Specifically, Williamson argued that Detective Keller "misrepresent[ed] through omission" that three of the images constituted CSAM because Detective Keller averred in the Residential Warrant affidavit that NCMEC had categorized them as "'Child Pornography,'" when in fact NCMEC had applied the label "'CP (Unconfirmed).'"  DE.44:16.  Williamson also claimed that Detective Keller materially omitted login information relating to the Yahoo account from the Residential Warrant affidavit by failing to explain how one of the images had been sent from Williamson's email account on September 8, 2020, when, according to data Yahoo had previously provided pursuant to the earlier Yahoo Warrant, the most recent date on which a user had logged into the account was September 5, 2020.  DE.44:18; *see* DE.44-3:2 (login data).

The government opposed the motion, arguing that Williamson lacked a reasonable expectation of privacy in his Yahoo account in light of the terms of service to which he had agreed; that neither Yahoo nor NCMEC acted as a

government agent; that law enforcement's search did not exceed the scope of Yahoo's (or NCMEC's), and that the private-search doctrine therefore applied; and that Williamson had failed to make a *prima facie* showing under *Franks* because he had neither set forth an offer of proof nor explained how any of Detective Keller's alleged misstatements were necessary to establish probable cause. DE.48:1-17. The government further argued that, in any event, the good-faith exception applied because reliance on the Residential Warrant was objectively reasonable. DE.48:17-18.

The magistrate judge convened an evidentiary hearing, at which representatives from Yahoo and NCMEC, as well as Detective Keller, testified. DE.99.

The magistrate judge issued a report and recommendation concluding that Williamson's motion should be denied, and the district court adopted it. DE.114 (report and recommendation); DE.145 (text entry). Although the court found that Williamson had a reasonable expectation of privacy in the contents of his Yahoo account, it held that law enforcement's review of the images referred through the CyberTip process was permissible under the private-search doctrine. DE.114:13-37. Specifically, the court reasoned, Yahoo was not acting as a government agent when it reviewed the contents of Williamson's email account, and, regardless of whether NCMEC qualified as a government agent,

neither its review of those images nor Detective Keller's subsequent review exceeded the scope of Yahoo's. DE.114:27-37.

Further, the court rejected Williamson's argument that Detective Keller included material misrepresentations and omissions in his affidavit such that a *Franks* hearing was required. It explained that the evidence failed to show that Detective Keller included any errors "made intentionally or in reckless disregard of the truth" in his descriptions of the images; rather, it showed that he simply understood NCMEC's labels as relatively unimportant "'suggestion[s],'" with the ultimate determinations to be made by him. DE.114:41-45 (brackets in original). With respect to the timing of the September 5 login to Williamson's email account, the court noted that Detective Keller *did* include in his affidavit the timing of the September 5 login and the September 8 email, and it further found that Detective Keller and Yahoo's representative both credibly testified that Yahoo users can remain logged in for weeks, supporting Detective Keller's statement that a login date three days prior to the sending of an email had no significant bearing on the probable-cause determination. DE.114:37-41. The court also explained that, even without any of the statements Williamson argued were misrepresentations, "the affidavits would still contain ample probable cause." DE.114:44.

13

Additionally, the district court held that suppression was unwarranted under the good-faith exception.  DE.114:45-46.  The court explained that, as it had already found, "Detective Keller did not make any intentional or reckless omissions or misrepresentations" in the Residential Warrant affidavit, and the good-faith exception as set forth in *United States v. Leon*, 468 U.S. 897 (1984), therefore applied.  DE.114:45-46.

2.    Williamson filed a second motion to suppress, arguing that evidence obtained pursuant to the Yahoo Warrant should be excluded because the Yahoo Warrant failed to satisfy the Fourth Amendment's particularity requirement. DE.134.  Specifically, Williamson contended that the Yahoo Warrant was overbroad because it "demand[ed] every message, every contact, every internet search, and every calendar entry, with no limitations related to the offense" or an appropriate "limit[ation] in time."  DE.134:8.  Williamson also argued that the Yahoo Warrant was both lacking in indicia of probable cause and facially deficient, such that the good-faith exception did not apply.  DE.134:11-14.

The government opposed the motion, arguing that the Yahoo Warrant was not unconstitutionally overbroad, particularly in light of the need to identify the user of the vladlover50 account at the time the Yahoo Warrant was obtained coupled with the warrant application's detailed description of the types of

14

records to be searched.  DE.138:4-9.  The government further argued that the good-faith exception applied.  DE.138:9-12.

The magistrate judge issued a report and recommendation concluding that Williamson's motion should be denied, and the district court adopted it. DE.173 (report and recommendation); DE.186 (text entry).  The court opined that the Yahoo Warrant was likely "adequately particularized" under the circumstances, notwithstanding its observation that the warrant was not "perfect" in its specificity.  DE.173:14-19.  The court concluded that it was unnecessary to decide whether the Yahoo Warrant was insufficiently particularized, however, because it fell "squarely within the good faith exception to the exclusionary rule established in *Leon*."  DE.173:19.

## IV.  Rulings Under Review

Williamson challenges the district court's denials of his first (DE.145) and second (DE.186) motions to suppress.

## SUMMARY OF ARGUMENT

1.    The district court correctly denied Williamson's first motion to suppress.  First, the private-search doctrine applied to law enforcement's review of the images obtained from the vladlover50 account because Detective Keller's viewing of those images was no more extensive than Yahoo's, and Yahoo functioned as a private actor.  Second, Williamson failed to carry his burden to

justify a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978), because he failed to make a substantial preliminary showing with respect to any alleged misrepresentations or omissions in the Residential Warrant application. Third, and in any event, the good-faith exception furnished an additional, independent ground for the district court's denial of Williamson's motion.

2.    The district court also correctly denied Williamson's second motion to suppress. Although the Yahoo Warrant permitted law enforcement to obtain and review potentially large categories of information relating to the vladlover50 account, it was sufficiently particularized in light of the nature of the information sought and the need to identify the user(s) of the account at that early stage of law enforcement's investigation. Moreover, even if the particularity of the Yahoo Warrant "presents a close question," as the district court suggested, DE.173:20, the good-faith exception applies.

## ARGUMENT

## I.    The District Court Correctly Denied Williamson's First Motion To Suppress.

Williamson argues (Br. 26-47) that the district court should have granted his first motion to suppress. He contends that the private-search doctrine does not apply to law enforcement's review of the images attached to his Yahoo email because Yahoo acted as a government agent when it viewed the contents of his email and, even if Yahoo were a private actor, law enforcement's review

16

exceeded the scope of Yahoo's search. He additionally argues that Detective Keller "recklessly omitted material facts and made material misrepresentations" in his application for the Residential Warrant, entitling Williamson to a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978). Finally, he maintains that, in light of the supposed misrepresentations and omissions in the Residential Warrant affidavit, the good-faith exception does not apply. Each of these contentions is meritless.

### A.    Standard of Review

This Court "review[s] the district court's factual findings for clear error and its application of the law to those facts *de novo*," construing facts "in the light most favorable to the prevailing party below." *United States v. Tovar-Rico*, 61 F.3d 1529, 1534 (11th Cir. 1995). This Court reviews for abuse of discretion a district court's denial of a *Franks* hearing. *United States v. Barsoum*, 763 F.3d 1321, 1329 (11th Cir. 2014).

### B.    Discussion

This Court should affirm the district court's denial of Williamson's first motion to suppress. First, the private-search doctrine permitted law enforcement to review the images that Yahoo, a private actor, had already reviewed. Second, the district court correctly concluded that Williamson failed to carry his burden to justify a *Franks* hearing. Third, even if law enforcement's

17

review of the images from one outgoing email violated the Fourth Amendment, the subsequent searches pursuant to the Yahoo Warrant and the Residential Warrant satisfied the requirements of the good-faith exception set forth in *United States v. Leon*, 468 U.S. 897 (1984).

> 1.  The private-search doctrine permitted law enforcement's review of images Yahoo had already examined.

The Fourth Amendment guards "against unreasonable searches and seizures" of a person's papers or effects.  U.S. CONST. amend. IV.  Warrantless searches are "presumptively unreasonable."  *United States v. Jacobsen*, 466 U.S. 109, 114 (1984).  One exception to that rule arises if a private actor has already searched another person's property.  In that case, the government may conduct a follow-up search without a warrant that does "not exceed the scope of the private search."  *Id.* at 116.  This follows straightforwardly from the fact that the Fourth Amendment regulates the government; "[t]he Fourth Amendment 'is wholly inapplicable to a search or seizure, even an unreasonable one, effected by a private individual not acting as an agent of the Government or with the participation or knowledge of any governmental official.'"  *United States v. Castaneda*, 997 F.3d 1318, 1327 (11th Cir. 2021) (quoting *Jacobsen*, 466 U.S. at 113).

This Court considers "two critical factors" in determining whether a private entity is functionally an agent of the government for Fourth Amendment

18

purposes: "(1) whether the government knew of and acquiesced in the intrusive conduct, and (2) whether the private actor's purpose was to assist law enforcement efforts rather than to further his own ends." *United States v. Steiger*, 318 F.3d 1039, 1045 (11th Cir. 2003); *see also United States v. Ford*, 765 F.2d 1088, 1090 (11th Cir. 1985) (per curiam) ("The Fourth Amendment is applicable . . . when a private citizen acts as an instrument or agent of the state." (internal quotation marks omitted)).  So, for example, this Court has explained that it did not offend the Fourth Amendment when private individuals, acting "not as government agents" but rather "out of a desire not to be caught up in any . . . criminal activity," discovered child pornography on a friend's computer and turned the computer over to federal law enforcement officials.  *Castaneda*, 997 F.3d at 1327-1328; *see also United States v. Harling*, 705 F. App'x 911, 916 (11th Cir. 2017) (per curiam) (holding private-search doctrine applied to officers' review of child pornography on two USB drives because private individuals had already viewed the files).

In short, "a warrantless law-enforcement search conducted after a private search violates the Fourth Amendment only to the extent to which it is broader than the scope of the previously occurring private search." *United States v. Sparks*, 806 F.3d 1323, 1334 (11th Cir. 2015), *overruled on other grounds by United States v. Ross*, 963 F.3d 1056 (11th Cir. 2020) (en banc).

19

a.    Here, the district court correctly held that Detective Keller's viewing of the images from Williamson's Yahoo account did not offend the Fourth Amendment because it was no broader than Yahoo's private search.

*First*, the district court correctly found that Yahoo was acting as a private entity, not as a government agent, when it detected and reviewed the images at issue.[7] DE.114:28-34. As to the first factor set forth in *Steiger*, the record is devoid of any indication that the government "knew of" or "acquiesced in" Yahoo's decision to view the images Williamson had sent from the vladlover50 account. *Steiger*, 318 F.3d at 1045. And although, as the district court acknowledged, Yahoo had a legal obligation to *report* any knowledge of online child sexual exploitation to NCMEC "as soon as reasonably possible after

---

[7] As the government argued below, DE.48:6-9, NCMEC was also acting as a private entity when it reviewed the images. *See* 18 U.S.C. § 2258D(a). Because, as explained in the text, Yahoo was a private actor when it viewed the images and neither NCMEC's nor Detective Keller's subsequent review of the images was any broader than Yahoo's, it makes no difference to the analysis whether NCMEC was a private actor or a government actor, and this Court need not address that question. *See United States v. Meals*, 21 F.4th 903, 908-909 (5th Cir. 2021) (assuming *arguendo* that NCMEC was a government agent and concluding that it made no difference to the result because its review of CyberTip materials "was confined to the scope and product of [Facebook's] initial search"); DE.114:34-35 (district court acknowledging that NCMEC's status presented a "close[] question" but explaining that, "even assuming *arguendo* that NCMEC was operating as an arm of the state when it inspected Mr. Williamson's emails, its examination did not exceed the scope of Yahoo's review").

obtaining actual knowledge," 18 U.S.C. § 2258A(a)(1)(A)(i), that reporting requirement neither obligated Yahoo to *search* its users' emails nor could be understood as constituting governmental knowledge of or acquiescence in such voluntary searches. Indeed, the relevant statute expressly disclaims any duty to search on the part of electronic service providers. 18 U.S.C. § 2258A(f) (disclaiming any requirement to "monitor any user, subscriber, or customer," "monitor the content of any communication of any" such person, or "*affirmatively search, screen, or scan* for" information subject to reporting requirement (emphasis added)). The numerous courts that have confronted this issue have uniformly reached the same conclusion. *See United States v. Sykes*, 65 F.4th 867, 877 (6th Cir. 2023) (rejecting argument that § 2258A reporting requirement "transform[s] a service provider into a government agent whenever it chooses to scan files sent on its network for child pornography" (brackets and internal quotation marks omitted)); *United States v. Rosenow*, 50 F.4th 715, 729-731 (9th Cir. 2022) (noting Yahoo is "free to choose not to search . . . users' data" and searches "of [its] own volition"); *United States v. Meals*, 21 F.4th 903, 907-908 (5th Cir. 2021) (rejecting argument Facebook acted as government agent in light of § 2258A and explaining that the statute "neither compels nor coercively encourages internet companies to search actively for" child pornography); *United States v. Miller*, 982 F.3d 412, 424 (6th Cir. 2020) (noting

reporting mandate "compels providers only to *report* child pornography that they know of; it does not compel them to *search* for child pornography of which they are unaware"); *United States v. Ringland*, 966 F.3d 731, 736 (8th Cir. 2020) (holding "Google did not act as a government agent because it scanned its users' emails volitionally and out of its own private business interests," and noting government neither knew of nor requested "Google's initial searches"); *United States v. Richardson*, 607 F.3d 357, 364-367 (4th Cir. 2010) (holding statutory reporting requirement "did not effectively convert AOL into an agent of the Government for Fourth Amendment purposes"). This Court should do the same.

The second factor—whether Yahoo's purpose in conducting its search "was to assist law enforcement efforts rather than to further [its] own ends," *Steiger*, 318 F.3d at 1045—points in the same direction, as the district court correctly concluded. As a Yahoo witness explained both during the suppression hearing and at trial, Yahoo had a substantial private business interest in enforcing its terms of service and in protecting both its users and its own reputation. DE.99:76 (explaining Yahoo enforces terms of service by disabling accounts upon finding "illegal content, specifically abuse to minors"); DE.99:91 (explaining Yahoo scans for child pornography "[v]oluntarily" "to keep [its] users safe, first and foremost, as well as [its] business responsibility to create a

22

safe environment"); DE.290:136 (explaining Yahoo scans for child pornography "to protect our users" and "business interests" because if Yahoo "were a haven for this content, [it] wouldn't have users").  Although "it is certainly the case that combating child pornography is a government interest," "this does not mean that Yahoo[] cannot voluntarily choose to have the same interest." *United States v. Cameron*, 699 F.3d 621, 638 (1st Cir. 2012).  As the district court explained, that Yahoo might have a private business interest in ridding its platform of child pornography is both unsurprising and consistent with the evidence in the record.  DE.114:32.

*Second*, the district court also correctly found that Detective Keller's subsequent review of the images Yahoo had already viewed did not exceed the scope of Yahoo's earlier search.  DE.114:35-37.  As a Yahoo legal services manager explained at the suppression hearing, Yahoo's hash-matching system for detecting known CSAM in its users' outgoing emails followed a routine protocol: if a file that matched NCMEC's hash list was detected, it would be "sent for human review" so that a human agent could "review if the hit was, in fact, CSAM," and, after that human review process was completed, Yahoo would submit a CyberTip to NCMEC.  DE.99:78-82.  The witness confirmed that, in this case, "a human person reviewed these images" flagged from the vladlover50 account; indeed, she explained, "[t]hat is the process and really the

only way to submit a CyberTip," and Yahoo "[n]ever" submitted a CyberTip absent human review of the flagged images or videos. DE.99:85-87. And the witness testified that there was no indication that those regular policies were not followed in this particular case. DE.99:129. Further, although the former Yahoo employee who actually submitted the CyberTip at issue here lacked a specific recollection of it, her testimony was consistent with the above-described practices: she testified that she never failed to review flagged images before submitting a CyberTip to NCMEC (and that it would have been a violation of policy not to); that her indication on the CyberTip form that she viewed the "'entire contents'" of the files meant that she personally reviewed them; and that it was in fact *impossible* to submit a CyberTip form without "[i]ndividually clicking each image that [the employee] viewed and selecting them to be sent to NCMEC." DE.99:135-140. Thus, when Detective Keller viewed the seven files at issue, he did no more than Yahoo's employees had already done. DE.99:154-155, 159 (Detective Keller explaining his review of images in accordance with then-applicable policy requiring review of all images submitted from NCMEC); *see Meals*, 21 F.4th at 908 (explaining NCMEC "could not have exceeded the scope of Facebook's search" where "the only thing NCMEC 'opened'" was the contents of the CyberTip Facebook had created and transmitted); *Ringland*, 966 F.3d at 737 (holding that "the government did not expand the search beyond

24

Google's private party search" where investigator viewed the same child

pornography files that Google had already searched).[8]

b.  Williamson's efforts to undermine these conclusions are

insubstantial, particularly in the face of the clear-error standard applicable to the

district court's findings of fact.  Williamson repeatedly asserts without record

support (Br. 29, 31) that "the government clearly knew" of Yahoo's search, and

_____

[8] Further, as an alternative basis for holding that the law enforcement
search of the files did not violate Williamson's Fourth Amendment rights, this
Court could also hold that Williamson lacked a reasonable expectation of
privacy in those files by the time the search took place because Yahoo had locked
him out of his account by disabling it.  "[A]n individual's Fourth Amendment
rights are *not* infringed—or even implicated—by a search of a thing or place in
which he has no reasonable expectation of privacy."  *United States v. Ross*, 964
F.3d 1034, 1040 (11th Cir. 2020).  Even if, as the district court held, Williamson
had a reasonable expectation of privacy in the contents of his emails *generally*,
DE.114:24-27, that expectation of privacy was no longer reasonable once Yahoo
deactivated Williamson's account per its terms of service, *see* DE.44-1:5
(CyberTip reflecting "account has since been disabled and these
image(s)/video(s) are no longer accessible"); DE.99:76 ("If my team finds illegal
content, specifically abuse to minors, we disable their account.").  Like a
lawfully evicted hotel guest, Williamson lacked a reasonable expectation of
privacy in the contents of an account from which Yahoo had barred him
pursuant to its terms of service.  *Cf. United States v. Allen*, 854 F. App'x 329, 332-
332 (11th Cir. 2021) (per curiam) (holding that after defendant was evicted from
motel, "any reasonable expectation of privacy [he] had in the motel room was
terminated because control of the room shifted from [him] back to the motel
owner"); *Ross*, 964 F.3d at 1043-1044; *United States v. Molsbarger*, 551 F.3d 809,
811-812 (8th Cir. 2009) ("Justifiable eviction terminates a hotel occupant's
reasonable expectation of privacy in the room."); *United States v. Allen*, 106 F.3d
695, 699 (6th Cir. 1997) ("Once the [motel] manager, through private action,
took possession of the motel room, [the defendant] could no longer assert a
legitimate privacy interest in its contents." (footnote omitted)).

he claims that § 2258A "compel[s] Yahoo . . . to proactively search for child pornography." As explained above, both assertions are incorrect. Indeed, the sole case Williamson cites on the latter point correctly arrived at the opposite conclusion. *United States v. DiTomasso*, 81 F. Supp. 3d 304, 310-311 (S.D.N.Y. 2015) (holding § 2258A's "reporting obligation, which only goes into effect *if* a search is performed, is insufficient" to convert a private search into a governmental search, and observing that electronic service providers may even have an incentive under the statute *not* to monitor for child pornography in order to avoid triggering the reporting requirement). Williamson's effort (Br. 30) to analogize this case to the Supreme Court's decision in *United States v. Henry* similarly falls flat: there, a "paid informant for the Government" "acting under instructions" engaged in deliberate elicitation of incriminating statements for Sixth Amendment purposes when he "deliberately used his position to secure incriminating information." 447 U.S. 264, 270 (1980). An FBI informant working "on a contingent-fee basis" whom the FBI knew could access an incarcerated criminal defendant, *id.* at 270-271, is quite differently situated from an email provider seeking voluntarily to protect its own business interests by deciding to investigate a user's sent email without the government's knowledge.

Relatedly, Williamson asserts (Br. 32) that Yahoo's detection and reporting of child pornography "serves only to comply with federal regulations

26

and to assist law enforcement in the course thereof." The Yahoo witness's testimony regarding Yahoo's understandable private interests in rooting out child pornography on its platform directly contradicts this assertion, as the district court found. DE.114:32. Williamson cannot demonstrate that the district court erred, much less clearly so, in its factual conclusions on this point. *See United States v. Ramirez-Chilel*, 289 F.3d 744, 749 (11th Cir. 2002) (explaining that, in the context of clear-error review following suppression hearing, district court's credibility determination "is conclusive on the appellate court unless the judge credits *exceedingly* improbable testimony" (internal quotation marks omitted)).

Further, Williamson argues (Br. 33-35) that Yahoo and the government "are clearly in . . . a 'symbiotic relationship'" such that Yahoo is effectively a state actor. Again, the record is devoid of support for the proposition that Yahoo and the government were somehow so intertwined that the decision of the former is constitutionally attributable to the latter, and the case law Williamson cites undermines his argument. *See Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1278-1279 (11th Cir. 2003) (explaining that "where the state *contractually requires* the private actor to take particular actions," "it can be said at the summary judgment stage that in acting in accordance with the governmental directive the private actor is merely a surrogate for the state"

27

(emphasis added)); *Nat'l Broad. Co. v. Commc'ns Workers of Am., AFL-CIO*, 860 F.2d 1022, 1027-1028 (11th Cir. 1988) (rejecting argument that convention center lessees' exclusion of NBC was attributable to government lessor where contract did not govern "the choice of whether to broadcast or of the networks to be allowed to broadcast"). As discussed above, courts have uniformly rejected the argument that a reporting requirement triggered by knowledge of child pornography transforms a voluntary search for child pornography into state action, and Williamson provides no sound reason for this Court to depart from that consensus.

Finally, Williamson's argument that law enforcement's search exceeded the scope of Yahoo's (Br. 37-41) is contradicted by the record. Williamson effectively claims that only certain kinds of direct evidence would suffice to prove that Yahoo employees actually viewed the images at issue, noting that, despite the testimony that Yahoo always did so under these circumstances, "the Government did not admit any written policies into evidence" and asserting that Detective Keller "conducted no investigation into what images Yahoo and/or the NCMEC might have viewed" (without explaining how such an investigation would be relevant to the Fourth Amendment analysis, or indeed what investigation would be necessary where the CyberTip itself indicated that Yahoo had viewed the "entire contents" of each uploaded image). And, as discussed

above and as the district court found, the testimony at the suppression hearing showed that Yahoo *never* submitted—and indeed could not submit—a CyberTip absent human review of the relevant images,[9] and there is no basis for disturbing that conclusion here.

> 2. Williamson failed to carry his burden to justify a *Franks* hearing.

"A *Franks* hearing is warranted where a defendant makes a substantial preliminary showing that an affiant made intentionally false or recklessly misleading statements (or omissions), and those statements are necessary to the finding of probable cause." *Barsoum*, 763 F.3d at 1328. "The defendant bears the burden of showing that, absent those misrepresentations or omissions, probable cause would have been lacking." *Id.* at 1329 (internal quotation marks omitted). This Court "employ[s] a commonsense approach in reviewing search warrants." *United States v. Albury*, 782 F.3d 1285, 1292 (11th Cir. 2015) (internal quotation marks omitted).

> a. The district court did not abuse its discretion in concluding that

Williamson had failed to make such a substantial preliminary showing, either

---

[9] That testimony makes this case readily distinguishable from *United States v. Wilson*, 13 F.4th 961 (9th Cir. 2021), on which Williamson relies (Br. 40-41). There, the Ninth Circuit held that a law enforcement agent's review of images forwarded in a CyberTip exceeded the scope of Google's private search because the agent "view[ed] the images *no Google employee had opened*." 13 F.4th at 973 (emphasis added).

with respect to Detective Keller's descriptions of the seven images in the Residential Warrant application or with respect to the timing of the vladlover50 account logins.    First, Detective Keller's specific, graphically detailed descriptions of the images supported his conclusion that four of them contained CSAM.  DE.44-2:5.  His erroneous statements that NCMEC had categorized three of those images as "Child Pornography" (rather than "Unconfirmed" child pornography), DE.44-2:5, were not intentionally or recklessly false or misleading in light of the explanation that the district court credited.  As Detective Keller testified, he simply did not view NCMEC's labels, which he did not always incorporate into his affidavits at all, as particularly significant, and he believed "unconfirmed" meant only that he was the one who would then need to "confirm" whether CSAM was present.  DE.114:42-43; *see* DE.99:163 ("I'm the one that reviews it in order to confirm it."); DE.99:181 (agreeing that he now understood that "unconfirmed" did not mean "that NCMEC had categorized this image previously as child pornography").  This explanation was bolstered by the fact that Detective Keller characterized as "age difficult" (meaning that it was difficult to determine the age of the subject and the images contributed little, if any, relevance to the probable-cause determination) images that NCMEC had labeled "CP (Unconfirmed)" and "Apparent Child Pornography," undermining the argument that Detective Keller had

30

intentionally or recklessly misled the issuing judge in describing the images. *Compare* DE.44-2:5 *with* DE.44-1:9; *see* DE.99:173 (Detective Keller explaining his view that a photograph he regarded as "age difficult" "would not meet probable cause"); DE.114:44.

Further, and in any event, excising any purported misstatements by removing all of the descriptions of NCMEC's labels would have no effect on the probable-cause determination. As the district court explained, the affidavit would still "establish that a detective well-versed in the contours of CSAM personally viewed seven images extracted from an email account tied to Mr. Williamson's residence, found a number of them to constitute child pornography, and then detailed the contents of those photographs for the reviewing judge to make his or her own determination." DE.114:44-45. And even one such image would have sufficed to supply probable cause, as Williamson conceded below. DE.114:45.

The district court also did not abuse its discretion in declining Williamson's request for a *Franks* hearing with respect to the timing of the vladlover50 account logins. As the district court explained, Detective Keller did include the relevant dates in his affidavit, undermining Williamson's argument that he had "intentionally or recklessly omitted" relevant information; further, based on suppression hearing testimony the district court credited, the fact that

the most recent recorded login to the vladlover50 account occurred three days before one of the CSAM images was sent from that account simply had little, if any, relevance to the probable-cause determination.  DE.114:40-41.  A Yahoo user could "stay logged into Yahoo" for "[a] couple of weeks" without having to log in again.  DE.99:88.  And Detective Keller explained his view that the most recent login date before an email was sent from a particular account therefore had "no bearing" on his search warrant application, because "people can stay logged into accounts for a significant period of time."  DE.99:164-165.

b.      Williamson offers no sound basis for this Court to reach a different conclusion on appeal.  First, Williamson mischaracterizes the record with respect to the NCMEC labels by asserting that Detective Keller "falsely alleged in the search warrant affidavit that all of the images were child pornography."  Br. 42.  He did not.  He misstated NCMEC's categorization of three of the images by omitting the "(Unconfirmed)" qualifier, but he accurately described all seven of the images and included his own, independent assessment of whether each of them included CSAM.  DE.44-2:5.  Williamson neither engages with the district court's crediting of Detective Keller's testimony regarding these categorizations (a credibility determination to which this Court must defer) nor grapples with the fact that, even if all of the affidavit's descriptions of NCMEC's labels were excised, the affidavit would still support a finding of probable cause,

a fact independently fatal to Williamson's *Franks* challenge. *Barsoum*, 763 F.3d at 1329; *see United States v. Moon*, 33 F.4th 1284, 1301 (11th Cir. 2022) (reviewing for abuse of discretion determination "that probable cause remained even without those parts of the affidavit that the district court excised").

Second, Williamson argues that "it is highly plausible that the email account at issue was logged out on September 8" and that "omission" of "facts concerning when the account was last logged in" reflected "at best[] a reckless disregard for the truth." Br. 43-44. That argument is flawed in two respects. Detective Keller *did* include "facts concerning when the account was last logged in" in his affidavit. DE.44-2:6 ("09/05/2020 was the last time the suspect logged into his Yahoo email before the reported incident occurred on 09/08/2020."). And Williamson ignores the testimony the district court credited that provided an innocuous explanation for this apparent three-day gap: users can simply remain logged in, potentially for weeks at a time. Thus, Williamson has failed to show that the district court erred in any respect in denying his request for a *Franks* hearing, much less that it abused its discretion.

3.    The good-faith exception applies.

Finally, and in any event, the good-faith exception furnishes an additional, independent ground on which to affirm the district court's denial of Williamson's first motion to suppress. "[U]nder the good faith exception to the

33

exclusionary rule, courts decline to suppress evidence when suppression would not further the rule's deterrent purpose." *United States v. Morales*, 987 F.3d 966, 973 (11th Cir. 2021). "That suppression will not deter future Fourth Amendment violations is especially clear 'when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope.'" *Ibid.* (quoting *Leon*, 468 U.S. at 920). "[T]he paradigmatic application of the good faith exception is to 'evidence obtained in objectively reasonable reliance' on a warrant, even if a court later invalidates the warrant for lack of probable cause." *Ibid.* (quoting *Leon*, 468 U.S. at 922). The good-faith exception "applies in all but four limited sets of circumstances":

> (1) where the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth; (2) where the issuing magistrate wholly abandoned his judicial role . . . ; (3) where the affidavit supporting the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) where . . . a warrant is so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid.

*United States v. Martin*, 297 F.3d 1308, 1313 (11th Cir. 2002) (internal quotation marks omitted). "If none of these four circumstances exists, [this Court] proceed[s] to determine whether the executing officer 'reasonably relied upon the search warrant.'" *Morales*, 987 F.3d at 974 (quoting *Martin*, 297 F.3d at 1318).

"This case does not implicate any of these four scenarios." *Ibid.* As discussed above with respect to the *Franks* issue and as the district court correctly found, there is no basis on which to conclude that Detective Keller knowingly or recklessly misled the issuing judge. DE.114:45-46. Williamson (Br. 46) repeats his argument that Detective Keller "misled the issuing court," but he is incorrect for the reasons discussed above.

Williamson also conclusorily asserts that "the affidavit was 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" Br. 46 (quoting *Martin*, 297 F.3d at 1313). This "passing reference[]" to an argument about the third exception to the good-faith exception forfeits it. *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 682 (11th Cir. 2014); *see United States v. Campbell*, 26 F.4th 860, 871-875 (11th Cir. 2022) (en banc) (clarifying that failure to raise an issue in an initial brief constitutes forfeiture). Even if this argument were developed, it would be reviewed only for plain error because Williamson did not raise it in connection with his first motion to suppress. *See United States v. Young*, 350 F.3d 1302, 1305 (11th Cir. 2003); DE.114:46 (district court explaining that Williamson had only made an argument regarding the first *Leon* exception). "To prevail under the plain error standard, an appellant must show: (1) an error occurred; (2) the error was plain; (3) it affected his substantial rights; and (4) it seriously affected the fairness of

35

the judicial proceedings." *United States v. Andres*, 960 F.3d 1310, 1316 (11th Cir. 2020) (internal quotation marks omitted).  Williamson cannot surmount this high hurdle.  The Yahoo Warrant and Residential Warrant applications included detailed, specific, graphic information about the CSAM Yahoo had detected, and the Residential Warrant application included additional information connecting Williamson's actions, including his emails to Minor Victim, to his residence.  *See* DE.44-2 (Residential Warrant application); DE.134-1 (Yahoo Warrant application).  Williamson makes no effort to explain how such affidavits could be regarded as at all "lacking in indicia of probable cause," and, if this Court reaches his argument, it should reject it.

## II.    The District Court Correctly Denied Williamson's Second Motion To Suppress.

Williamson next contends (Br. 47-55) that the Yahoo Warrant was insufficiently particularized because it required Yahoo to provide "all 'account activity from creation to 11/24/20'" for the vladlover50 account, and he further argues that this "facial overbreadth" renders the good-faith exception inapplicable.  Williamson is incorrect on both fronts.

### A.    Standard of Review

The standard of review is set forth above, *supra* p. 17.

### B.    Discussion

1.    The Yahoo Warrant was sufficiently particular.

The Fourth Amendment requires a warrant to "particularly" describe "the place to be searched, and the persons or things to be seized." U.S. CONST. amend. IV. This requirement addresses "the specific evil" of "the 'general warrant' abhorred by the colonists, and the problem is not that of intrusion per se, but of a general, exploratory rummaging in a person's belongings." *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971). "Still, the requirement must 'be applied with a practical margin of flexibility, depending on the type of property to be seized,' and the property description need only be 'as specific as the circumstances and nature of activity under investigation permit.'" *United States v. McCall*, 84 F.4th 1317, 1327 (11th Cir. 2023) (quoting *United States v. Wuagneux*, 683 F.2d 1343, 1349 (11th Cir. 1982)). A warrant "need only be as narrow as reasonably expected 'given the state of the investigator's knowledge and the nature and extent of criminal activities under investigation.'" *Ibid.* (quoting *Wuagneux*, 683 F.2d at 1350) (brackets and ellipsis omitted).

In the context of warrants authorizing searches of digital accounts, this Court has explained that "there are generally two types of limitations that can particularize" them: limitations "based on the subject matter of the data" and "temporal limitation[s]." *Ibid.* "Of course, the circumstances of an investigation

37

may not require any subject- or time-limitation . . . ." *Id.* at 1328.  Accordingly, this Court has taken a context-specific approach to particularity challenges to warrants in the digital realm, taking into account the nature and status of the law enforcement investigation at the time a particular warrant was sought.

For example, in *United States v. Alford*, a panel of this Court held that a warrant requesting from Google "[a]ny and all records, files, data, and/or other forms of information" "which may aid in obtaining the identification and/or location" of someone who had used an anonymous Google Voice phone number was sufficiently particular under the circumstances.  744 F. App'x 650, 652-653 (11th Cir. 2018) (per curiam).  While acknowledging that the warrant "requested nearly every kind of data that could be found in a Google account," the panel explained that "the information requested was all potentially incriminating because it could have identified the . . . caller," so, "using a practical margin of flexibility, the warrant here was as specific as the circumstances and nature of the activity under investigation permitted." *Id.* at 653.

This Court applied the same analytical framework in *United States v. Blake*, 868 F.3d 960 (11th Cir. 2017).  There, after identifying and arresting the two defendants in connection with an online prostitution ring, the FBI sought and obtained multiple warrants. *Id.* at 966.  Those included a warrant directing

38

Microsoft to turn over "certain categories of emails . . . that were linked to the sex trafficking charges against" the defendants, as well as two warrants directing "Facebook to 'disclose' to the government virtually every type of data that could be located in a Facebook account, including every private instant message [one defendant] had ever sent or received, every IP address she had ever logged in from," and more.  *Id.* at 966-967.  The latter Facebook warrants were not temporally limited (one "asked for all data 'from the period of the creation of the account,'" and the other did not specify a time period at all), but they "did state that the only information that would be 'seized,' after all that data had been 'disclosed' to the FBI, was data that 'constitute[d] fruits, evidence and instrumentalities' of a specified crime."  *Id.* at 967 (brackets in *Blake*).  This Court concluded that the Microsoft warrant was sufficiently particular, as it was limited to "only those [emails] that had the potential to contain incriminating evidence," but the Facebook warrants were "another matter," as they "unnecessarily" "required disclosure to the government of virtually every kind of data that could be found in a social media account."  *Id.* at 973-974.

The Yahoo Warrant, in light of the state of the investigation and Detective Keller's knowledge at the time and applying a practical margin of flexibility, was sufficiently particular.  *See McCall*, 84 F.4th at 1327.  At the time Detective Keller sought the Yahoo Warrant, he knew that the vladlover50 account had been used

39

to send multiple CSAM images and that an associated IP address was linked to an Internet subscriber at a particular physical address in North Port, Florida, DE.134-1:4-5, but, crucially, he had not yet identified the person responsible. As in *Alford*, the Yahoo Warrant application explicitly connected the breadth of account information it requested to the need to identify the then-unknown individual user of the account. DE.134-1:6 (explaining how various types of account information would help identify the user, which may be necessary because Yahoo "may not verify the true identity of an account creator, account user or any other person who accesses a user's account"); *Alford*, 744 F. App'x at 653 ("Although the warrant requested nearly every kind of data that could be found in a Google account, any of that data could have helped identify the owner of the account."). As the district court found, "the vast majority of the data requested by Detective Keller in the Yahoo [W]arrant was potentially relevant" to identifying Williamson and any associate(s) or victim(s) affiliated with the vladlover50 account. DE.173:15. And unlike in *Blake*, where the defendants had already been arrested and this Court opined that the Facebook warrants "unnecessarily" required production of wide swaths of account information, 868 F.3d at 973-974, law enforcement had not yet identified, much less arrested, Williamson. Additionally, the Yahoo Warrant included detailed descriptions of types of files in which evidence of Williamson's crimes might be

found, including saved files that "can be stored as an attachment in an email which was either received, sent, or attempted to be sent in the past, or . . . saved." DE.134-1:6. As the district court acknowledged, the Yahoo Warrant "(like most warrants) could have been better drafted," DE.173:18, but the Fourth Amendment's particularity "requirement does not necessitate technical perfection," *United States v. Bradley*, 644 F.3d 1213, 1259 (11th Cir. 2011).

In resisting this reasoning, Williamson primarily relies on *Blake*, contending that the warrant here "was materially indistinguishable from the *Blake* Facebook warrant[s]" and that Detective Keller "could have easily limited the data requested to only information pertaining to the accountholder's identity and to only activity surrounding the suspected transmissions of child pornography." Br. 51. Williamson's effort to analogize the Facebook warrants in *Blake* is unpersuasive because, unlike in *Blake* and as noted above, law enforcement had yet to identify the user(s) of the vladlover50 account at the time the Yahoo Warrant was sought. *See* DE.173:15 (district court "highlighting" this distinction). And Williamson's contention that the Yahoo Warrant "could have easily" been limited to information regarding the accountholder's identity is unsupported by the record. As both the district court here and the panel in *Alford* correctly reasoned, and as the Yahoo Warrant application itself explained, a wide variety of data could be relevant to identifying the user of the account,

41

and Williamson does not explain how, as a practical matter, the Yahoo Warrant could realistically have been more narrowly particularized on that front. *See* DE.173:15-16; *Alford*, 744 F. App'x at 653.

> 2.    Even if the Yahoo Warrant failed to satisfy the particularity requirement, the good-faith exception applies.

This Court should hold that, even if the Yahoo Warrant was insufficiently particular, the good-faith exception to the exclusionary rule applies. *See* DE.173:19-20 (district court declining to decide particularity issue and concluding good-faith exception applies). As discussed above with respect to the first motion to suppress, *supra* pp. 33-34, "the paradigmatic application of the good faith exception is to 'evidence obtained in objectively reasonable reliance' on a warrant." *United States v. Morales*, 987 F.3d 966, 973 (11th Cir. 2021) (quoting *United States v. Leon*, 468 U.S. 897, 922 (1984)). As this Court has repeatedly held, the good-faith exception applies when officers have acted in reasonable reliance on a later-invalidated search warrant, including where a warrant was arguably insufficiently particular but not "so facially deficient . . . that the executing officers cannot reasonably presume it to be valid." *United States v. Martin*, 297 F.3d 1308, 1313 (11th Cir. 2002) (internal quotation marks omitted).

Indeed, in both *Alford* and *Blake*, this Court held that, even if the warrants in those cases failed to satisfy the particularity requirement, the good-faith

42

exception applied because none of the warrants at issue were so facially deficient that officers could not have reasonably believed them to be valid.  Much like the Yahoo Warrant, the Google warrant in *Alford* was necessary "to identify the . . . caller, and all of the evidence furthered that goal.  Even if the warrant should have been further limited in scope, it is a close question and the warrant was not so obviously flawed that [the officer] could not have reasonably believed it to be valid."  *Alford*, 744 F. App'x at 653-654.  Similarly, in *Blake*, this Court explained that, "while the [Facebook] warrants may have violated the particularity requirement, whether they did is not an open and shut matter; it is a close enough question that the warrants were not 'so facially deficient' that the FBI agents who executed them could not have reasonably believed them to be valid."  *Blake*, 868 F.3d at 975.

Additionally, in *McCall*, this Court again applied the good-faith exception to a digital warrant that bore a close resemblance to the Yahoo Warrant.  There, the defendant had allegedly used his cell phone to arrange an armed robbery, and law enforcement secured a warrant to search an iCloud account to which the phone had been backed up before the robbery took place.  84 F.4th at 1320.  Although the warrant lacked a temporal limitation and specified seven broad offense-related categories of information that together "encompassed most of the account's conceivable data," "[t]he detective reasonably could have believed

43

that the seven categories of iCloud information fell within the practical margin of flexibility for his broad investigative task, especially given the close connection between the cell phone used to commit the crime and the cloud account." *Id.* at 1328.

Just so here.  Although the Yahoo Warrant lacked a temporal limitation and specified seven broad categories of information to be searched, DE.134-1:8-9, Detective Keller could have reasonably believed that the Yahoo Warrant was drafted within a practical margin of flexibility, particularly given the need to identify the user(s) of the vladlover50 account and the obvious close connection between that account and the offenses under investigation.

Williamson contends (Br. 54-55) only that the good-faith exception does not apply because the Yahoo Warrant was facially deficient, but the above case law—including *Blake*, on which Williamson relies—fatally undermines his argument.  As the district court correctly reasoned, "Williamson can, at most, assert that the particularity of the [Yahoo W]arrant presents a close question," but "he cannot fairly maintain that the [Yahoo W]arrant was so patently lacking in particularity that it is 'an open and shut matter.'"  DE.173:20 (quoting *Blake*, 868 F.3d at 975).  Thus, the good-faith exception applies.

44

# CONCLUSION

For the foregoing reasons, this Court should affirm the judgment of the district court.

Respectfully submitted,

MATTHEW R. GALEOTTI
Acting Assistant Attorney General

ANDREW W. LAING
U.S. Department of Justice
Criminal Division, Appellate Section
950 Pennsylvania Ave. NW
Washington, DC 20530
(202) 353-8433
andrew.laing@usdoj.gov

August 5, 2025

## CERTIFICATE OF SERVICE

I certify that on August 5, 2025, I caused the foregoing brief to be served upon all Filing Users through the Court's Case Management/Electronic Case Files ("CM/ECF") system.

s/ Andrew Laing
ANDREW W. LAING
U.S. Department of Justice
Criminal Division, Appellate Section
950 Pennsylvania Ave. NW
Washington, DC 20530
(202) 353-8433
andrew.laing@usdoj.gov

## CERTIFICATE OF COMPLIANCE

1.    This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because it contains 9,956 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.    This brief complies with the typeface and type-style requirements of Fed. R. App. P. 32(a)(5) & (a)(6) because it has been prepared in a proportionally spaced, 14-point font in text and footnotes using Word for Microsoft 365.

s/  Andrew Laing
ANDREW W. LAING
U.S. Department of Justice
Criminal Division, Appellate Section
950 Pennsylvania Ave. NW
Washington, DC 20530
(202) 353-8433
andrew.laing@usdoj.gov
